IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

DWIGHT L. SHIVERS, JR.,                  :
                                         :
      Plaintiff,                        :
                                         :
v.                                       : Civil Action No. 22-603-RGA
                                         :
NATASHA L. HOLLINGSWORTH, et al.         :
                                         :
      Defendants.                       :

---

Dwight L. Shivers, Jr., James T. Vaughn Correctional Center, Smyrna, Delaware. Pro Se Plaintiff.

**MEMORANDUM OPINION**

June 29, 2023
Wilmington, Delaware

ANDREWS, U.S. District Judge:

On May 4, 2022, Plaintiff Dwight L. Shivers, Jr., an inmate at James T. Vaughn Correctional Center ("JTVCC") in Smyrna, Delaware, filed this action pursuant to 42 U.S.C. § 1983. (D.I. 2). He appears *pro se* and has been granted leave to proceed *in forma pauperis*. (D.I. 5). He later filed an Amended Complaint (D.I. 7) and then a Second Amended Complaint (D.I. 17-1), which is the operative pleading.[1] The Court proceeds to screen the Second Amended Complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and § 1915A.

## BACKGROUND

The following facts are taken from the Complaint and assumed to be true for purposes of screening the Complaint. *See Shorter v. United States*, 12 F.4th 366, 374 (3d Cir. 2021).

Plaintiff names as Defendants the deputy warden of JTVCC; several correctional officers; Centurion Medical, which is the medical services provider for the Delaware Department of Correction ("DDOC"); and a Centurion employee. The central claims in the Second Amended Complaint are for due process violations arising from at least four false reports filed against Plaintiff. In each instance, a Defendant falsely certified that Plaintiff was read and understood his rights at least twenty-four hours before a disciplinary hearing. Plaintiff additionally asserts that he was not provided counsel at the hearings despite his requests for counsel, or assistance at the hearings from a

---

[1] The Second Amended Complaint was docketed as a motion to amend (D.I. 17), which the Court will grant.

1

mental health clinician, which he was entitled to under DDOC policy because he suffers from serious mental illness.

The first disciplinary hearing on June 23, 2021, resulted in Plaintiff serving fifteen days in the solitary housing unit, losing potential institutional jobs at JTVCC, and losing "potential good time credits, which affected the duration of Plaintiff's incarceration." (D.I. 17-1 at 9) (edited).  The next two disciplinary hearings, about August 31 and September 15, 2021, also resulted in fifteen-day stays in the solitary housing unit.  (*Id.* at 12-15).  It is unclear what, if any, penalty resulted from the fourth disciplinary hearing.  The date of the fourth disciplinary hearing is also unclear.

The fourth disciplinary hearing resulted from a June 10, 2022 false report filed by Defendant Sergeant Norman Figuroa.  Plaintiff refused to enter a cell where the electricity was surging, which was a fire and safety hazard and an unlawful housing situation per DDOC policy.  Defendant Figuroa, who ordered Plaintiff into the cell, knew from past adversarial experiences with Plaintiff that ordering him in would prompt a reaction out of Plaintiff.  The incident angered Plaintiff to the point of slamming his own head twice into a steel door, cause a split over his right eye.  He was treated only with Tylenol for five days.  Based on these allegations, Plaintiff appears to claim that ordering him into the cell constituted cruel and unusual punishment, causing him to injure his own head constituted failure to protect, and treating the resulting injury with Tylenol constituted deliberate indifference.

On September 15, 2022, Defendant Wanda Mixion, a mental health clinician employed by Centurion, submitted false answers on a mental health assessment form, which resulted in Plaintiff not being able to receive assistance from a mental health

2

clinician at a disciplinary hearing. Defendant Mixion did so in violation of Centurion policy. (*Id.* at 21).

Deputy Warden Hollingsworth denied Plaintiff's appeals, thus violating his due process rights by failing to remedy the wrongs carried out in conjunction with the disciplinary hearings. Finally, Plaintiff references being assaulted by an inmate, after having advised Defendant Kyaire Hutchings that Plaintiff had an issue with that inmate.

For relief, Plaintiff seeks damages.

## SCREENING OF COMPLAINT

A federal court may properly dismiss an action *sua sponte* under the screening provisions of 28 U.S.C. § 1915(e)(2)(B) if "the action is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief." *Ball v. Famiglio*, 726 F.3d 448, 452 (3d Cir. 2013) (quotation marks omitted); *see also* 28 U.S.C. § 1915(e)(2) (*in forma pauperis* actions); 28 U.S.C. § 1915A (civil actions filed by prisoners seeking redress from governmental entities or government officers and employees). The Court must accept all factual allegations in a complaint as true and take them in the light most favorable to a *pro se* plaintiff. *See Phillips v. County of Allegheny*, 515 F.3d 224, 229 (3d Cir. 2008). Because Plaintiff proceeds *pro se*, his pleading is liberally construed and his Second Amended Complaint, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).

A complaint is not automatically frivolous because it fails to state a claim. *See Dooley v. Wetzel*, 957 F.3d. 366, 374 (3d Cir. 2020). Rather, a claim is deemed

frivolous only where it relies on an "'indisputably meritless legal theory' or a 'clearly baseless' or 'fantastic or delusional' factual scenario.'" *Id.*

The legal standard for dismissing a complaint for failure to state a claim pursuant to § 1915(e)(2)(B)(ii) and § 1915A(b)(1) is identical to the legal standard used when ruling on Rule 12(b)(6) motions. *Tourscher v. McCullough*, 184 F.3d 236, 240 (3d Cir. 1999). However, before dismissing a complaint or claims for failure to state a claim upon which relief may be granted pursuant to the screening provisions of 28 U.S.C. §§ 1915 and 1915A, the Court must grant Plaintiff leave to amend his complaint unless amendment would be inequitable or futile. *See Grayson v. Mayview State Hosp.*, 293 F.3d 103, 114 (3d Cir. 2002).

A well-pleaded complaint must contain more than mere labels and conclusions. *See Ashcroft v. Iqbal*, 556 U.S. 662 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). A plaintiff must plead facts sufficient to show that a claim has substantive plausibility. *See Johnson v. City of Shelby*, 574 U.S. 10, 12 (2014) (per curiam). A complaint may not be dismissed, however, for imperfect statements of the legal theory supporting the claim asserted. *See id.* at 11.

A court reviewing the sufficiency of a complaint must take three steps: (1) take note of the elements the plaintiff must plead to state a claim; (2) identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth; and (3) when there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016). Elements are sufficiently alleged when the facts in the complaint "show" that the plaintiff is entitled to relief. *Iqbal*, 556 U.S. at

4

679 (quoting Fed. R. Civ. P. 8(a)(2)). Deciding whether a claim is plausible will be a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.*

## DISCUSSION

**Due Process.** The allegations do not raise any due process claims. First, the filing of false disciplinary charges does not constitute a claim under § 1983 so long as the inmate was granted a hearing and an opportunity to rebut the charges. *See Crosby v. Piazza*, 465 F. App'x 168, 172 (3d Cir. 2012) (citing *Smith v. Mensinger*, 293 F.3d 641, 653-54 (3d Cir. 2002)). It is clear from the allegations that Plaintiff received disciplinary hearings and presented defenses. Therefore, to the extent he asserts due process claims based on filing false reports, the claims must be dismissed.

To the extent Plaintiff alleges that he was subjected to disciplinary confinement without due process of law, his claims also fail. In *Wolff v. McDonnell*, 418 U.S. 539, 556 (1974), the Supreme Court held that prisoners must be accorded due process before prison authorities may deprive them of state created liberty interests. A prison disciplinary hearing satisfies the Due Process Clause if the inmate is provided with: (1) written notice of the charges and not less than 24 hours to marshal the facts and prepare a defense for an appearance at the disciplinary hearing; (2) a written statement by the fact finder as to the evidence relied on and the reasons for the disciplinary action; and (3) an opportunity "to call witnesses and present documentary evidence in his defense when to do so will not be unduly hazardous to institutional safety or correctional goals." *Id.* at 563-71; *Griffin v. Spratt*, 969 F.2d 16, 19-20 (3d Cir. 1992).

Despite Plaintiff's assertions to the contrary, it is well established that prisoners do not have a due process right to appointed counsel in prison disciplinary hearings. *See Wolff v. McDonnell*, 418 U.S. at 569-70; *see also Robinson v. Warden*, 250 F. App'x 462, 464 (3d Cir. 2007) (per curiam) (holding that "due process does not require cross-examination or counsel"); *Castillo v. FBOP FCI Fort Dix*, 221 F. App'x 172, 174-75 (3d Cir. 2007) (same). Similarly, Plaintiff's assertions that he was entitled by DDOC policies to have a mental health clinician present at his hearings are incorrect. DDOC "statutes and regulations do not provide prisoners with liberty or property interests protected by the Due Process Clause." *Clark v. Coupe*, 2015 WL 4477698, at *3 (D. Del. Jul. 22, 2015) (citing *Carrigan v. Delaware*, 957 F. Supp. 1376 (D. Del. 1997); *Jackson v. Brewington-Carr*, 1999 WL 27124 (D. Del. Jan. 15, 1999)).

Plaintiff's due process claims thus appear to hinge on his allegations that Defendants falsely certified that he was read and understood the charges at least twenty-four hours before the disciplinary hearings. Although the Court accepts these allegations as true, it is axiomatic that to be entitled to procedural due process protections as set forth in *Wolff*, a prisoner must be deprived of a liberty interest. *See Wolff*, 418 U.S. at 557-558.

The Due Process Clause itself "confers no liberty interest in freedom from state action taken 'within the sentence imposed.'" *Sandin v. Conner*, 515 U.S. 472, 480 (1995) (quoting *Hewitt v. Helms*, 459 U.S. 460, 468 (1983)). State-created liberty interests protected by the Due Process Clause are generally limited to restraints on prisoners that impose an "'atypical and significant hardship on the inmate in relation to

6

the ordinary incidents of prison life.'" *Griffin v. Vaughn*, 112 F.3d 703, 706 (3d Cir. 1997) (quoting *Sandin*, 515 U.S. at 484).

In deciding whether a protected liberty interest exists under *Sandin*, a federal court must consider the duration of the disciplinary confinement and the conditions of that confinement in relation to other prison conditions. *Mitchell v. Horn*, 318 F.3d 523, 532 (3d Cir. 2003) (citing *Shoats v. Horn*, 213 F.3d 140, 144 (3d Cir. 2000)). The nature of the test is fact-specific. *See Shoats*, 213 F.3d at 144 (eight years in administrative confinement, during which inmate was locked in his cell for all but two hours per week, denied contact with his family, and prohibited from visiting the library or "participating in any education, vocational, or other organization activities," implicated a protected liberty interest); *Smith v. Mensinger*, 293 F.3d 641, 645, 654 (3d Cir. 2002) (seven months in disciplinary confinement did not implicate a liberty interest), *Torres v. Fauver*, 292 F.3d 141, 151-52 (3d Cir. 2002) (disciplinary detention for fifteen days and administrative segregation for 120 days was not atypical treatment in New Jersey prisons and therefore did not implicate a protected liberty interest).

In this case, the allegations do not establish that the individual sanctions of fifteen-day confinements to the solitary housing unit constituted "atypical and significant hardships" sufficient to trigger a liberty interest. These periods of confinement were neither atypically long, nor distinct from sanctions imposed on other inmates housed at JTVCC. *See, e.g., Coleman v. Metzger*, 2020 WL 3452993, at *3 (D. Del. Jun. 24, 2020) (holding that 17 days in segregation at JTVCC did not trigger a liberty interest).

As to Plaintiff's allegation that he lost potential good time credits, although prisoners have a liberty interest in retaining good time credits they have already earned,

7

see, e.g., *Burns v. Pa Dep't of Corr.*, 642 F.3d 163, 171-72 (3d Cir. 2011), Plaintiff does not have a protected liberty interest in good time credits that he has not yet earned. See *Monroe v. Bryan*, 487 F. App'x 19, 21 (3d Cir. 2012) (holding that the loss of eligibility to earn good time credits is too attenuated to amount to a protected liberty interest absent the loss of any previously earned credits). To the extent that Plaintiff's allegations could be construed as claiming the loss of good time credits he already earned, his claims are *Heck*-barred[2] because they challenge the deprivation of his good time credits, which impact the duration of his confinement, and therefore must be brought in a *habeas* action. *Morrison v. Rochlin*, 778 F. App'x 151, 154 (3d Cir. 2019) (per curiam) (citing *Edwards v. Balisok*, 520 U.S. 641, 643-44, 646 (1997)).

Finally, pursuant to longstanding precedent, Plaintiff also did not have a protected liberty interest in potential institutional jobs at JTVCC. See *Burrell v. Staff*, 60 F.4th 25, 54 n.8 (3d Cir. 2023) ("'We do not believe that an inmate's expectation of keeping a particular prison job amounts either to a 'property' or 'liberty' interest entitled to protection under the due process clause.'") (quoting Bryan v. Werner, 516 F.2d 233, 240 (3d Cir. 1975)).

For these reasons, Plaintiff's allegations fail to establish claims for due process violations.

**Medical Claims.** The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.

---

[2] See *Heck v. Humphrey*, 512 U.S. 477, 486-87 (1994) (holding that, where success in a § 1983 action would necessarily imply the invalidity of a conviction or sentence, an individual's suit for damages or equitable relief is barred unless he can demonstrate that his conviction or sentence has been invalidated).

*Estelle v. Gamble*, 429 U.S. 97, 103-05 (1976). In order to set forth a cognizable claim, an inmate must allege (i) a serious medical need and (ii) acts or omissions by prison officials that indicate deliberate indifference to that need. *Id.* at 104; *Rouse v. Plantier*, 182 F.3d 192, 197 (3d Cir. 1999). A prison official is deliberately indifferent if he or she knows that a prisoner faces a substantial risk of serious harm and fails to take reasonable steps to avoid the harm. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). A prisoner has no right to choose a specific form of medical treatment. *Lasko v. Watts*, 373 F. App'x 196, 203 (3d Cir. Apr. 10, 2010) (citing *Harrison v. Barkley*, 219 F.3d 132, 136 (2d Cir. 2000)). "Mere disagreement as to the proper medical treatment is insufficient" to state a constitutional violation. *Spruill*, 372 F.3d at 235. Treatment is presumed to be proper, absent evidence that there was a violation in the standard of care. *Pearson v. Prison Health Serv.*, 850 F.3d 526, 535 (3d Cir. 2017). In addition, allegations of medical malpractice are not sufficient to establish a constitutional violation. *See White v. Napoleon*, 897 F.2d 103, 108-09 (3d Cir. 1990); *see also Daniels v. Williams*, 474 U.S. 327, 332-34 (1986) (noting that negligence is not compensable as a constitutional deprivation).

Plaintiff's medical allegations fall short of stating a claim for deliberate indifference under the Eighth Amendment. His allegation of receiving Tylenol for his head injury is merely a disagreement with his course of treatment. His allegations regarding Defendant Mixion constitute, at most, medical malpractice. To the extent that his allegations against Defendant Mixion were meant to sound in due process, they fail for the lack of a protected liberty interest as outlined above.

**Claim against Centurion.** Corporations such as Centurion that contract with government entities to provide prison medical services cannot be held liable under § 1983 based on theories of *respondeat superior* or vicarious liability. *See Natale v. Camden Cnty. Corr. Facility*, 318 F.3d 575, 583 (3d Cir. 2003) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 691 (1978)); *see also Miller v. Corr. Med. Sys., Inc.*, 802 F. Supp. 1126, 1131-32 (D. Del. 1992). Instead, a corporation's liability for constitutional violations under § 1983 may be established only if the plaintiff provides evidence of a "relevant [] policy or custom, and that the policy caused the constitutional violation they allege." *Natale*, 318 F.3d at 584; *see also Price v. Kozak*, 569 F. Supp. 2d 398, 413 (D. Del. 2008).

"To satisfy the pleading standard, [Plaintiff] must identify [the] custom or policy, and specify what exactly that custom or policy was." *McTernan v. City of York*, 564 F.3d 636, 658 (3d Cir. 2009). Plaintiff fails to meet this requirement. To the contrary, Plaintiff alleges that Mixion's allegedly wrongful conduct *violated* Centurion policy. Accordingly, the claim against Centurion will be dismissed.

**Eighth Amendment Claim.** Plaintiff apparently claims that his confinement for an indeterminate period of time in a cell with surging electricity constituted cruel and unusual punishment in contravention of the Eighth Amendment.

"The Eighth Amendment prohibits deprivations suffered during incarceration that constitute an unnecessary and wanton infliction of pain, including those that are totally without penological justification." *McClure v. Haste*, 820 F. App'x 125, 128 (3d Cir. 2020) (per curiam) (quotations and citations omitted). The Third Circuit has explained that to violate the Eighth Amendment,

10

> the deprivation alleged must be, objectively, sufficiently serious, resulting in the denial of the minimal civilized measure of life's necessities. Although the Eighth Amendment does not mandate comfortable prisons, prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care. In a challenge to those conditions, the inmate must show that he is incarcerated under conditions posing a substantial risk of serious harm. However, the proof necessary to show that there was a substantial risk of harm is less demanding than the proof needed to show that there was a probable risk of harm.

*Mammana v. Fed. Bureau of Prisons*, 934 F.3d 368, 372-73 (3d Cir. 2019) (quotations, citations, and footnotes omitted). Notably, "the length of the inmate's exposure to the alleged unconstitutional conditions and the totality of the circumstances must be considered when making a determination as to whether a condition amounts to cruel and unusual punishment." *McClure*, 820 F. App'x at 129 (quotation and citation omitted). Here, Plaintiff has not alleged the length of time he was submitted to the conditions in the cell, but the allegations appear to indicate that it was too brief a period to constitute an Eighth Amendment violation. *See, e.g., Collier v. Adams*, 602 F. App'x 850, 853 (3d Cir. 2015) (per curiam) (holding that the deprivation of running water from an inmate's cell for 77 hours was not sufficiently serious to constitute an Eighth Amendment violation); *Williams v. Delo*, 49 F.3d 442, 444-47 (8th Cir. 1995) (holding no Eighth Amendment violation where prisoner spent four days in a strip cell without clothes, water in cell was turned off and mattress removed, and prisoner's bedding, clothing, legal mail, and hygienic supplies were withheld). Plaintiff also fails to allege any injury arising therefrom. This claim will be dismissed for failure to state a claim.

**Failure to Protect.** "[A] corrections officer's failure to intervene in a beating can be the basis of liability for an Eighth Amendment violation under § 1983 if the corrections officer had a reasonable opportunity to intervene and simply refused to do

so." *Smith v. Mensinger*, 293 F.3d 641, 650 (3d Cir. 2002). "To state a claim for damages against a prison official for failure to protect from inmate violence, an inmate must plead facts that show (1) he was incarcerated under conditions posing a substantial risk of serious harm, (2) the official was deliberately indifferent to that substantial risk to his health and safety, and (3) the official's deliberate indifference caused him harm." *Bistrian v. Levi*, 696 F.3d 352, 369 (3d Cir. 2012). A mere allegation "that a defendant knew of a risk to the plaintiff is insufficient to support an inference of deliberate indifference absent any factual allegations supporting that conclusion, and thus cannot alone establish facial plausibility." *E.D. v. Sharkey*, 2017 WL 2126322 at *6, (E.D. Pa. May 16, 2017).

Here, Plaintiff's barebones allegation that he advised Defendant Hutchings in some unspecified way that he had an undefined issue with an inmate who ultimately assaulted him at some point in time in a manner Plaintiff did not describe, fails to meet the pleading standard.[3] *See Iqbal*, 556 U.S. at 679; *Connelly*, 809 F.3d at 787. Similarly, his possible claim that Defendant Figuroa failed to protect him from smashing his own head into a steel door out of frustration with their disagreement fails to meet the pleading standard.

**Leave to Amend.** Although the Court suspects that amendment is futile as to most of Plaintiff's claims, and possibly all of them, he will be given leave to file a Third

---

[3] I think Plaintiff is saying that he told Defendant Hutchings a year earlier that he had had an altercation with another inmate. (D.I. 17-1 at 10). It seems to be presented more as an explanation for why he refused to "lock in" when he was placed in a cell with that inmate. He does not seem to be alleging that Defendant Hutchings has anything to do with Plaintiff's being ordered to lock in with that inmate.

12

Amended Complaint asserting any of the dismissed claims and addressing the deficiencies outlined herein.

## CONCLUSION

For the above reasons, the Court will: (1) grant Plaintiff's motion for leave to amend; and (2) dismiss the Second Amended Complaint for failure to state claims upon which relief can be granted pursuant to 28 U.S.C. §§ 1915(e)(2)(B)(ii) and 1915A(b)(1). Plaintiff will be given leave to file an amended complaint.

An appropriate Order will be entered.

13